UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

BOAZ PLEASANT BEY,                )
                                  )
            Plaintiff,            )
                                  )
v.                                )      No.:    2:15-CV-174-TWP-MCLC
                                  )
TENNESSEE DEPARTMENT OF           )
CORRECTION, *et al*.,             )
                                  )
            Defendants.           )

## <u>MEMORANDUM OPINION</u>

Before the Court are cross Motions for Summary Judgment [Docs. 89, 92] in this pro se

prisoner civil rights action arising under 42 U.S.C. § 1983. For the reasons set forth herein, the

Court will **GRANT** Defendants' Motion [Doc. 89] and **DENY** Plaintiff's Motion [Doc. 92].

Plaintiff's remaining Motions [Docs. 93, 94, 96] are **DENIED AS MOOT**, and this action will be

**DISMISSED WITH PREJUDICE**.

## I.      PROCEDURAL BACKGROUND

On June 24, 2015, Plaintiff Boaz Bey, a pro se prisoner, filed a Complaint under 42 U.S.C.

§ 1983, against the following Defendants: Tennessee Department of Correction; Commissioner

Derrick Schofield; Bennie Townsend; Warden Gerald McAllister; Assistant Craig Julian; Maurice

Widener; John Walker; and Warden Randy Lee [Doc. 1].[1] On September 30, 2015, after screening

the Complaint, the Court permitted Plaintiff to advance as to his claims that Northeast Correctional

Complex – the facility at which Plaintiff is presently incarcerated – discriminates against Muslim

---

[1] Plaintiff originally named Johnson County, Tennessee and Mountain City, Tennessee as Defendants; however, Plaintiff subsequently sought voluntary dismissal of these two Defendants, and the Court granted his request [Docs. 1, 51, 52].

inmates with respect to its policies regarding both Halal meals and the Ramadan fast [Doc. 3 at 7-8]. The Court expressly dismissed Plaintiff's claims regarding (1) the purchase and use of prayer oil and other religious items, and (2) Plaintiff's purported inability to teach non-Muslims about his religion, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A [*Id.* at 4-7, 8-9]. Plaintiff subsequently filed a motion for reconsideration, which the Court granted in part on October 28, 2015, allowing Plaintiff to proceed with his constitutional claim that he is unable to practice his Muslim religion because the only prayer oil available for purchase is blessed by a Catholic priest [Doc. 7 at 3-4 ("The Court limits [the scope of the grant] to the allegation that Plaintiff is unable to obtain prayer oil blessed by a Muslim or non-blessed oil" and "reiterates that Plaintiff's prior allegations regarding purchasing religious items from a different website . . . remain dismissed."); *see also* Doc. 6].

On May 31, 2017, Defendants filed a Motion for Summary Judgment, along with a statement of undisputed material facts, supporting memorandum, and a single piece of evidence: the affidavit of Edgar Tabares [Docs. 89 through 91]. Plaintiff filed a Response to Defendants' Motion and a cross-motion for summary judgment, relying on his own affidavit and affidavits from several other NECX inmates as supporting evidence [Docs. 92, 92-1]. Defendants did not file a reply to Plaintiff's response, nor did they file a response to Plaintiff's cross-motion for summary judgment.

## II.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the parties here have filed cross-motions for summary judgment, the Court "must evaluate each motion on its own merits and

view all facts and inferences in the light most favorable to the nonmoving party." *Hensley v. Gassman*, 693 F.3d 681, 686 (6th Cir. 2012) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)).

A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence

supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; rather, there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The Court notes that Plaintiff is proceeding in this action *pro se*. The Court is mindful that pro se filings are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys. *Bridge v. Ocwen Fed. Bank,* 681 F.3d 355, 358 (6th Cir. 2012). However, the leniency afforded to *pro se* plaintiffs is not boundless, and the Court is accordingly "not require[d] to either guess the nature of or create" claims or arguments on behalf of a pro se litigant. *See*, *e.g.*, *Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *Whitson v. Union Boiler Co.*, 47 F. App'x 757, 759 (6th Cir. 2002).

## III.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Prayer Oil Claim

Defendants argue that they are entitled to judgment as to Plaintiff's claim that his constitutional rights were violated because he was not permitted to buy certified Halal prayer oil, given that the oil provided to TDOC facilities is officially certified as Islamic and Halal [Doc. 91

at 3-4 (citing Doc. 91-1)].  In support, they rely on the affidavit of Edgar Tabares, the Director of Inmate Programs – Western Region, for Union Supply Group [*Id.*].  Tabares avers that: (1) Union Supply purchases prayer oil from Prime Products USA that it then sells to the TDOC; (2) "the prayer oils purchased by Plaintiff from Union Supply are officially certified as Islamic and Halal"; (3) in describing prayer oils as "officially blessed" in their catalogs, Union Supply indicates "that the products are approved for religious use and certified as Halal by the Islamic Society of the Washington Area"; and (4) "Union Supply has no information or knowledge that the oils are blessed by a catholic priest or by any representative of any other religious denomination" [Doc. 90-1 at 1-2].  Tabares attached "true and exact copies of the Islamic (Halal) certificates that were provided to Union Supply by Prime Products USA to ascertain the prayer oils' Halal status from April 2013 to May 2017" [*Id.* at 2, 4-11].  The certificates state that the oil products manufactured and distributed by Prime Products are under the "supervision" of the Islamic Society of the Washington Area, that they do not contain any "haram" items, and that "they are all considered suitable for consumption by Muslims and have complied with the Halal requirements according to Islamic Sharia food laws" [2] [*Id.* at 4-11].

Liberally construing his filing, Plaintiff appears to argue that there is, at a minimum, a genuine issue of material fact as to whether the prayer oil available for purchase at NECX (1) is blessed by a Catholic priest, and (2) is "naturally Halal" – that is, according to Plaintiff, "from a Islamic vendor who has Muslims handling the prayer oil, packaging the prayer oil and shipping the prayer oil" [*Id.* at 1-4].  Plaintiff argues that the unavailability of an Islamic vendor from which to purchase "naturally Halal" or unblessed prayer oil is a substantial burden on the practice of his

---

[2] "Haram" is further defined on some certificates as "pork or alcohol" while on others it is defined simply as "unlawful" [Doc. 90-1 at 4-11].

Muslim faith [*Id.*].[3]

For support, Plaintiff relies primarily upon the unsworn declaration of Chuck Womack, a fellow NECX inmate [*Id.*; Doc. 92-1 at 2]. Womack avers that he was present in the office of NECX Chaplin Weidner in June 2014 when Weidner called Union Supply Company's customer service line; he placed the phone in speaker mode so that Womack could hear the conversation [Doc. 92-1 at 2]. A woman answered the call, at which time Weidner asked what "officially blessed" meant in regards to the prayer oil listed in the company's product catalog [*Id.*]. According to Womack, the woman's response was that "the prayer oil is officially blessed by a Catholic Priest" [*Id.*]. Womack thereafter told his fellow inmates, including Plaintiff, about the conversation [*Id.*].

Plaintiff relies on one additional piece of documentary evidence in support of this argument. On July 5, 2015, Plaintiff submitted an inmate inquiry stating: "Please call Union Supply Direct. The last time I checked, the oil they sold was blessed officially by a Catholic Priest. I want to check again and make sure the oil was still blessed that way before I purchased any."

---

[3] The Court notes that, in partially granting Plaintiff's motion for reconsideration of the Court's dismissal of Plaintiff's free exercise claims related to prayer oil, the Court expressly declined to reconsider its conclusion that Plaintiff had not stated a claim with respect to his inability to order prayer oil from another vendor [Doc. 7 at 4]. Thus, the Court hereby reaffirms its prior holding that the free exercise clause "does not prohibit a policy which hinders [a prisoner's] ability to buy prayer oil from his choice of vendors" and concludes that no additional discussion of this issue is necessary at the summary judgment stage [Doc. 3 at 27 (citing *Davis v. Powell,* 901 F. Supp. 2d 1196, 1232 (S.D. Cal. 2012) (finding that a prisoner did "not have a constitutional right to a vendor of his choice" for his purchase of prayer oil"); *Thomas v. Little,* 2009 WL 193873, at *5 (W.D. Tenn. July 6, 2009) (holding that a prisoner who challenged the same TDOC authorized-vendor policy possessed no constitutional entitlement to order prayer oil from a vendor of his own choosing); *Kensu v. Cason,* 1996 U.S. Dist. LEXIS 5468, at *45-47 (W.D. Mich. Mar. 29, 1996) (approving a prison policy providing that religious oil must be ordered from the state approved vendor, which sold only Moroccan oil, based on a failure to establish any meaningful religious difference between Muslim and Buddhist oils).

[Doc. 92-1 at 3].  According to Plaintiff's affidavit, he filed this request form in response to hearing Womack's account of the June 2014 phone call, as he wanted to "confirm[]" that Union Supply Company's prayer oil was officially blessed by a Catholic priest [*Id.* at 7].  On July 8, 2015, Widener responded to the inquiry stating "Nothing has Changed!"  [*Id.* at 3].

After careful consideration, however, the Court concludes that Plaintiff's evidence constitutes inadmissible hearsay.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801; *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 n.1 (6th Cir. 2012) (quoting *United States v. Rodriguez–Lopez*, 565 F.3d 312, 314 (6th Cir. 2009)).  In this case, Petitioner relies upon the declaration of Womack, wherein Womack recounts the statement of unidentified female customer service representative who allegedly stated on a telephone call that the prayer oil sold by Union Supply is blessed by a Catholic priest.  This statement is clearly offered to prove the truth of the matter asserted – that is, that the prayer oil available to purchase from Union Supply is blessed by a Catholic priest and therefore not Halal – and is clearly not made by the declarant herself during testimony or under oath.  As such, this statement constitutes hearsay.

For the same reason, Plaintiff's request form must also be deemed inadmissible hearsay. Plaintiff's statement is simply a recitation of the same hearsay statement identified above, as it was, by his own admission, based on Womack's recounting of the statement of the identified Union Supply customer service representative.  Weidner's response on Plaintiff's request is somewhat vague.  First, it is unclear from the statement "nothing has changed" whether Weidner complied with Plaintiff's request that he call Union Supply again or whether he is simply stating that he has had no reason to think that anything has changed.  Further, he does not expressly confirm or refute Plaintiff's stated assumptions about the oil being blessed by a Catholic priest.  However, even if

the Court liberally construes his response as a confirmation of Plaintiff's stated assumptions, such a statement involves two layers of hearsay: first, from Weidner himself, who has not made any such statement during testimony or under oath, and also from whomever Weidner spoke to at Union Supply about the prayer oil.

The Court cannot identify any clear exception to the hearsay rule that would render these statements admissible. Because these statements constitute inadmissible hearsay, they may not be considered by the Court at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801(c); *see also, e.g., Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003).

Thus, the only remaining evidence as to this claim is Tabares' affidavit and the accompanying certificates from the Islamic Society of the Washington Area [Doc. 91-1]. Tabares avers that "the prayer oils purchased by Plaintiff from Union Supply are officially certified as Islamic and Halal," that "officially blessed" in the Union Supply catalog means "that the products are approved for religious use and certified as Halal by the Islamic Society of the Washington Area," and that "Union Supply has no information or knowledge that the oils are blessed by a catholic priest or by any representative of any other religious denomination" [Doc. 90-1 at 1-2]. The attached certificates confirm that the manufacture and distribution of these oils is under the "supervision" of the Islamic Society of the Washington Area, who verifies that the oils are "suitable for consumption by Muslims and have complied with the Halal requirements" of Islamic law [*Id*. at 4-11].

Simply put, when considering Plaintiff's claims regarding prayer oil under either RLUIPA or the Free Exercise clause of the First Amendment, Defendant has met its burden of demonstrating that there is an absence of evidence to support Plaintiff's claim that his right to exercise his chosen

religion has been infringed; Plaintiff, in contrast, has failed to meet his burden of demonstrating that sufficient evidence supports his claim for relief.[4]  Based on the evidence before the Court, there is insufficient evidence upon which the Court or a jury could conclude that Plaintiff is being denied the opportunity to purchase adequate Halal prayer oil for his prayer practice.  Specifically, Plaintiff has failed to offer more than a mere scintilla of evidence that the oil sold by Union Supply Company is inadequate for his Muslim prayer practice.  Valid and compelling evidence from Union Supply Company reflects that the oil is not only not blessed by a Catholic priest, as Plaintiff repeatedly contends, but is in fact under the supervision of the Islamic Society of Greater Washington and is certified to comply with the requirements of Islamic law.[5]  The evidence clearly demonstrates that no constitutional violation occurred, as Plaintiff has been given the opportunity to purchase proper Halal prayer oil with which to engage in the exercise of his Muslim faith.  Finding that no genuine issues of material fact remain as to Plaintiff's claim regarding prayer oil, the Court will **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's Motion

---

[4] "To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice." *Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014).  Religious discrimination claims raised pursuant to 42 U.S.C. § 1983 and the Free Exercise Clause of the First Amendment also require a showing of a substantial burden to the plaintiff; however, the protections afforded to litigants by § 1983 are "less strong" than those afforded by RLUIPA.  *See, e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010); *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010).

[5] Plaintiff repeatedly asserts that Halal oil does not have to be certified, as it is "naturally" Halal, seemingly arguing by extension that certified oil cannot be Halal, as naturally Halal oil needs no certification.  However, such argument is a logical fallacy: assuming that Plaintiff's premise is true (that naturally Halal oil does not need to be certified), this does not guarantee that his conclusion is true (that oil that is certified cannot be naturally Halal).  Prayer oil will either be Halal or it will not be Halal; a piece of paper stating that a particular oil is Halal does not change the fundamental nature or qualities of the oil itself.  Thus, the Court concludes that this argument represents nothing more than Plaintiff's unsupported inference that the prayer oil available for purchase is contaminated or inadequate for the purposes of his religious practices, and as such, it is not entitled to consideration at the summary judgment stage.  *See, e.g.*, *Davis*, 901 F. Supp. at 1215 (conclusory allegation of contaminated prayer oil "insufficient" to create a factual dispute).

for Summary Judgment.

**B.     Religious Diet Claims**

Defendants also argue that Plaintiff has not demonstrated that the policies and procedures of NECX regarding Halal meals and the Ramadan fast impose a "substantial burden" on his exercise of his Muslim religion under RLUIPA [Doc. 91 at 4-7].  However, Defendants did not present any evidence with respect to Plaintiff's claims related to Halal food and the 2014 Ramadan fast.  Rather, they refer back to Plaintiff's Complaint, noting that Plaintiff has admitted that (1) NECX provides meals certified as Halal and/or kosher; (2) Muslim inmates can eat the kosher meals and meats given to Jewish inmates; and (3) Muslim inmates are provided with Halal fish as a dietary option [*Id*. at 6].  Defendants maintain that Plaintiff's allegations demonstrate, at most, that the policies in question make Plaintiff's practice of his religion "inconvenient" or "less than ideal," but do not rise to the level of a constitutional violation [*Id*.].

Plaintiff raises numerous arguments in support of his claims regarding constitutional defects with NECX's policies regarding religious diets and offers various affidavits in support of those arguments.  A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not presented sufficient evidence or argument in opposition; rather, the Court must still examine the motion to ensure that the movant has met his initial burden. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998).  The Court is not, however, required to "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party."  *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 410 (6th Cir. 1992).  "Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted."  *Id*. (internal

quotation marks omitted).  If such evidence supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith."  *Id.* (alteration omitted).  It is under this standard that the Court will assess Plaintiff's motion for summary judgment as to his religious diet claims.

### 1.    Halal Menu

Relying primarily on his own affidavit, Plaintiff raises numerous arguments regarding access to appropriate Halal meals for Muslim inmates at NECX [Doc. 92 at 6-12; Doc. 92-1 at 4-8, 10].  Plaintiff argues that Defendants' meal policies regarding religious meals are discriminatory towards Muslims.  He avers that general population inmates are fed a variety of meats, vegetables, eggs, juices, and milks, and Jewish inmates on the kosher meal plan receive packaged meals with a variety of meats, whereas Muslim inmates on the Halal meal plan do not receive packaged meals from a Halal vendor and receive little to no animal protein [Doc. 92-1 at 4, 6, 8, 19].[6]

Plaintiff and several other NECX inmates aver that, although NECX has changed the Halal meal plan since this action was commenced, the diet frequently consists of "non-traditional foods," such as peanut butter and jelly sandwiches, oatmeal, rice, soybeans, tofu, seedless fruits, and a variety of processed foods, including powdered eggs and milk and white bread, and the food on the Halal menu is "so nasty and not edible that the Muslim inmates have to throw it away" [Doc. 92-1 at 4-6, 11-17, 19].[7]

---

[6] Plaintiff indicates that, at the time the suit was filed, the Halal menu included a single source of animal protein – tuna fish – but that tuna fish has since been removed from the Halal diet, leaving Muslim inmates with no animal protein on their menu [Doc. 92-1 at 4, 18].  Plaintiff implies that Muslims could receive kosher meals at NECX, but that, in order to do so, the inmate would have "to change his religious preference from Muslim to Jew" [*Id.* at 18].

[7] Plaintiff appears to define "non-traditional foods" as those foods that "were not eaten by Prophet Muhammad."  [*See generally* Docs 92, 92-1].

Plaintiff filed grievances requesting that the Halal menu include a variety of fish, other Halal meats, boiled eggs, and other "natural foods," but his requests were denied [*Id.* at 4-6]. Plaintiff argues Defendants continue to feed inedible, non-traditional foods to Muslim inmates, and that their refusal to change the Halal menu places a substantial burden on Plaintiff and other Muslim inmates in practicing their faith [Doc. 92 at 6-10; Doc. 92-1 at 4-8, 10-11, 14-15].[8]

a.  Free Exercise

The Court turns now to Plaintiff's claim that Defendants' policies regarding Halal meals burden his right to free exercise of religion pursuant to RLUIPA.[9]  Under RLUIPA, the government may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" without demonstrating that the burden (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000cc–1(a); *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002).  A plaintiff raising a claim pursuant to RLUIPA must "prove that the disputed policy substantially burdens his religious exercise"; if that burden is met, "the burden shifts to the defendant to meet a compelling interest

_____

[8] Plaintiff also avers that "inmates and staff who would touch pork and [haram] meats . . . were preparing the Halal meals" [Doc. 92-1 at 5].  However, no additional information or evidence is given with respect to this conclusory statement; indeed, Plaintiff does not aver as to whether he personally witnessed cross-contamination, or whether this statement is based on hearsay.  Because no other evidence in the record supports this averment, the Court finds it insufficiently reliable, as it is not clear that it is based on Plaintiff's personal knowledge, and as such, the Court will not rely on it on summary judgment.

[9] As noted *supra*, RLUIPA provides individuals with "expansive" protections for religious liberty.  *See, e.g.*, *Holt v. Hobbs*, 135 S.Ct. 853, 860 (2015).  Accordingly, the Court will analyze Plaintiff's claims under the RLUIPA framework, which encompasses the more general standard applied to First Amendment free exercise claims.

standard." *Carrick*, 31 F. App'x at 179.

"There does not appear to be universal agreement as to what constitutes a [H]alal diet in the prison context." *Hudson v. Caruso*, 748 F. Supp. 2d 721, 726–27 (W.D. Mich. 2010).[10] However, regardless of the lack of consensus as to the definition of Halal, "courts have determined that a correctional facility need only provide Muslim prisoners with food that is not haram[.]" *Id.* at 729-30 (citing *Abdullah v. Fard*, 1999 WL 98529, at *1 (6th Cir. Jan. 28, 1999).[11] As such, courts have consistently concluded that there is no right to Halal meat entrees, rather than vegetarian meals and non-meat substitutes under the Constitution or under RLUIPA, and thus, that there is no substantial burden on a plaintiff's exercise of religion when he is offered vegetarian or other non-haram food options. *See, e.g.*, *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015); *Cloyd v. Dulin*, 2012 WL 5995234, at *4 (M.D. Tenn. Nov. 30, 2012); *Sareini v. Burnett*, 2011 WL 1303399, at *5 (E.D. Mich. Mar. 31, 2011); *Hudson*, 748 F. Supp. 2d at 729–30 (W.D. Mich. 2010); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810-11 (8th Cir. 2008) (noting that vegetarian dishes are Halal "unless they have been otherwise contaminated, such as coming into contact with haram foods or being cooked or served in containers that have been in contact with

---

[10] Indeed, what foods are "Halal" appears to be a "subjective" standard, depending upon the individual's personal beliefs. *Hudson*, 748 F. Supp. 2d at 727; *see also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008) (noting that "[s]ome forms of Islamic dietary restrictions are stricter than others").

[11] Several courts have taken notice of the fact that there are several generally accepted categories of food defined as haram under Islamic law: pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1313 (10th Cir. 2010); *Hudson v. Dennehy*, 538 F.Supp.2d 400, 406 n.13 (D. Mass. 2008) (listing the categories of haram food as "alcohol, blood, carnivorous animals and birds of prey, carrion, animals sacrificed to a deity other than Allah, and swine"). "[F]ood containing gelatin, enzymes, and emulsifiers" may be halal or haram depending on their origins. *See Abdulhaseeb*, 600 F.3d at 1313.

haram foods without being properly cleaned" and finding no substantial burden on plaintiff's exercise of religion because he was given alternatives to eating non-Halal meat); *Watkins v. Shabazz*, 180 F. App'x 773, 775 (9th Cir. 2006) (concluding that nutritionally equivalent meat substitute was sufficient alternative to non-Halal meat); *Abdullah*, 1999 WL 98529, at *1; *cf. Thompson v. Aviles*, 2008 WL 746666, at *4 (D.N.J. Mar. 18, 2008) (noting that vegetarian meals "avoid a vast portion of Haram (impermissible) food, such as pork products or the meat of animals not properly slaughtered").

Stated another way, inmates "food preferences, as prisoners, are limited." *Hudson*, 748 F. Supp. 2d at 729–30 (W.D. Mich. 2010). After all, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981). As such, there is no constitutional right to "tasty or widely varied" foods, *Hatcher v. Roller*, 2015 WL 5703266, at *6 (E.D. Tenn. Sept. 28, 2015) (citing *Cunningham v. Jones,* 567 F.2d 653, 659–60 (6th Cir. 1977)), nor is there a "constitutional right for each prisoner to be served the specific foods he desires . . . in prison," *Robinson*, 615 F. App'x at 314; *see also Jackson v. Risner*, 2017 WL 5712672, at *2 (6th Cir. May 15, 2017) (citing *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007), for the proposition that "prison officials are not required . . . to respond to particularized religious dietary requests"); *Carrick*, 31 F. App'x at 179 (noting that the inmate's right to a religious diet is "essentially a constitutional right not to eat the offending food item," but not a right to the specific diet of his or her choice).

Under this standard, the Court finds that Plaintiff has failed to demonstrate that the meal plan at NECX substantially burdens his exercise of his Muslim faith. Plaintiff identifies many aspects of the meals available to him that he dislikes: the taste of the Halal meals, the fact that no animal proteins are available on the Halal meal plan, the lack of fresh foods, the diversity of the

14

choices offered, the fact that he can obtain his desired foods only if he changes his religious preference to Jewish which would entitle him to kosher meals. What Plaintiff has not done, however, is presented any evidence that he has no dietary option at NECX that does not contain haram food items. *See Davis v. Heyns*, 2017 WL 8231366, at *3 (6th Cir. Oct. 16, 2017) (affirming district court finding that prisoner failed to establish substantial burden because he did not argue "that the vegan meals available to him are haram"). Instead, his evidence confirms that NECX offers a Halal meal plan, that he is able to receive a Halal meal tray pursuant to that plan, and that he and other inmates on the Halal meal plan at NECX are given some foods that can be considered Halal even under the incredibly narrow definition employed by the declarants.[12] *See Adams*, 2015 WL 846553, at *4-5. While Plaintiff may desire specific foods, foods that are tastier, or a wider

---

[12] Plaintiff also presented evidence demonstrating that TDOC contracted with Dr. Ossama Bahloul to assist with the development of educational programs for staff and inmates around religious diets, to provide consultation services regarding and review of the Halal menu, and to certify that the menu appropriately accommodates inmates requiring a religious Halal diet [Doc. 92-1 at 22]. Plaintiff argues that Bahloul is not providing proper consultation by approving of a menu that includes processed and non-traditional Halal foods [Doc. 92 at 10-11; Doc. 92-1 at 6, 19-20].

Plaintiff's personal disagreement with the quality of Bahloul's consulting services is unpersuasive to the Court as it is premised on the fact that the Halal menu does not comport with his narrow definition of "Halal." As noted by this Court and others before it, there is no "universal agreement" as to what constitutes a Halal diet or a Halal food. Thus, it does not necessarily follow that Bahloul has provided inadequate consultation because she has approved of a menu that includes foods that Plaintiff considers non-traditional and/or unappealing. Ultimately, Bahloul's contract is of limited utility in the Court's consideration of this matter, as no evidence was presented regarding her actual conclusions or contributions to the creation or modification of the Halal diet. The contract is relevant only to the extent that it further underscores the fact that TDOC did, in fact, offer a Halal meal plan and engaged at least one purported expert or professional to assist them in ensuring that such a menu would appropriately accommodate inmates of the Muslim faith in practicing their chosen religion. *See Sareini*, 2011 WL 1303399, at *8.

Plaintiff also repeatedly argues that Bahloul is "violating the tenets of Islam by 'selling' his religion." [Doc. 92, 92-1]. However, this Court has neither the knowledge nor the authority to determine whether any individual is complying with or violating the tenets of his or her chosen religion, and regardless, such an argument is unrelated to any factual or legal issues is this action.

variety of options, the record is clear that Plaintiff is not being denied Halal meals. As such, the Court finds that Plaintiff has not been substantially burdened in practicing his Muslim faith, and that he has accordingly failed to create a genuine issue of material fact as to whether his right to free exercise of religion under the First Amendment and/or RLUIPA have been violated. Accordingly, Plaintiff's Motion for Summary Judgment with respect to this claim is **DENIED**, and Defendants' Motion for Summary is **GRANTED**.

### b.   Equal Protection

The Court will first address Plaintiff's claim that Defendants' policies regarding Halal meals violate the equal protection clause. "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In the prison context, the heart of such a claim is that "similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (*en banc*) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990)). For a claim of discrimination based on religion, a prisoner must show that he has been denied a reasonable opportunity to pursue his faith as compared to inmates of other religions, and that such discriminatory treatment was purposeful. *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1041-1042 (D. Minn. 2010); *Adams v. Woodall*, 2015 WL 846553, at *2 (M.D. Tenn. Feb. 26, 2015), *report and recommendation adopted*, 2015 WL 1235087 (M.D. Tenn. Mar. 17, 2015) (noting plaintiff's burden of proving "the existence of purposeful discrimination" in order to demonstrate a violation of the equal protection clause); *Sareini*, 2011 WL 1303399, at *8 (prison system's creation of a Halal diet with vegetarian entrees and protein substitutes to accommodate Muslim prisoner's "demonstrates an intent to accommodate Plaintiff's religious

16

beliefs, not to discriminate against Plaintiff on the basis of religion" for equal protection clause analysis).

Plaintiff's equal protection argument is unpersuasive. First, Plaintiff cannot maintain an equal protection claim comparing Muslim inmates at NECX to the remainder of the general population inmates at NECX, as the general population inmates – who may have no faith system or come from a variety of religious backgrounds – are not a similarly situated class with respect to special diets.

Plaintiff's comparison of Muslim and Jewish inmates is more germane, but nonetheless, is lacking in merit. Plaintiff simply states the ways in which the two menus – Halal and kosher – are different and then reaches the conclusion that discrimination against Muslims is the cause of such difference. Plaintiff's argument is circular (difference begets discrimination which begets difference and so on), and his allegation of discrimination is unsupported by any evidence in the record, and as such, he has failed to meet his burden of demonstrating that genuine issues of material fact remain as to whether Defendants have purposefully discriminated against Muslim inmates with respect to religious diet policies. Finding that no genuine issues of material fact remain as to Plaintiff's claim regarding the Halal menu, the Court will **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment.

### 2. 2014 Ramadan Fast

Plaintiff also makes specific claims about Ramadan 2014. Plaintiff maintains that Ramadan obliges him to refrain from food and drink during the hours from sunrise to sunset [Doc. 92-1 at 20]. During the 2014 Ramadan fast, Warden McAllister placed NECX on lockdown due to fights and violence, and as a result, the commissary was closed for purchases [*Id*. at 20]. During the lockdown, Plaintiff only had access to trays of food that were brought to their cells; however,

given that the breakfast trays were delivered after sunrise from July 2, 2014 through July 6, 2014, Plaintiff missed his breakfast meal on those days [*Id*. at 8, 20].[13] Plaintiff "experienced abnormal stomach cramps" and his "spiritual focus was distorted" [*Id*. at 8]. By the time Plaintiff was able to eat again, after sunset, his breakfast tray was "spoiled" and he only had access to the "very small" dinner that was brought to his cell [*Id*. at 8, 20].

He implicitly concedes that meals provided in adherence with the Ramadan fasting schedule from July 7, 2014 through July 27, 2014; however, on July 28, 2014 – the final day of the Ramadan fast – breakfast was not provided before sunrise and dinner was fed prior to sunset, causing Plaintiff to miss the last day of the Ramadan fast [*Id*. at 7-8]. Thus, Plaintiff went without food or water for more than twenty-four hours [*Id*. at 7]. Plaintiff argues the Defendants violated (1) the equal protection clause as "general population inmates were able to eat [three] meals . . . during those days and the Plaintiff was only allowed to eat dinner" for the first five days of Ramadan and was unable to eat at all on the final day of Ramadan; (2) his first Amendment rights to practice his religion; and (3) the Eighth Amendment right to be free from cruel and unusual punishment [*Id*. at 14-15].

First, Plaintiff's equal protection argument fails because, as discussed above, the general population inmates are not a similarly situated group to Muslims with respect to claims regarding timing and caloric requirements for religious fasting, and because Plaintiff has failed to offer any evidence raising an inference of purposeful discrimination.

Plaintiff's Eighth Amendment claim also fails on the merits. Eighth Amendment claims require proof of a sufficiently serious deprivation and "deliberate indifference" – that is, that the

---

[13] Plaintiff submitted a request to be able to break his fast "with traditional foods, 100% milk, dates and Zam Zam water," but that his request was "quickly denied" [Doc. 92-1 at 18].

state actor disregarded a known or obvious consequence of his action. *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015); *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994) (defining deliberate indifference as "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other" and noting that the concept is "routinely equated . . . with recklessness"). With regard to food, federal courts have concluded that the Eighth Amendment "requires only that prisoners receive food that is adequate to maintain health." *Garnica v. Wash. Dep't of Corr.,* 965 F. Supp. 2d 1250, 1265 (W.D. Wash. 2013) (quoting *LeMaire v. Mass,* 12 F.3d 1444, 1456 (9th Cir.1993)); *see also Hudson v. McMillian,* 503 U.S. 1 (1992) (holding that "[o]nly those conditions of confinement that deny a prisoner "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation").

In this case, the Court finds that Plaintiff has failed to produce more than a "mere scintilla" of evidence to support an inference that genuine issues of material fact remain as to Eighth Amendment claim regarding access to sufficient food during the 2014 Ramadan fast. Taking the facts in the light most favorable to Plaintiff, there were five days during which Plaintiff was only able to eat one meal, and one day on which Plaintiff was entirely unable to eat. Plaintiff concedes that the prison was on lockdown during the dates in question, and has presented no evidence from which the Court could infer that the timing of the tray delivery on the days in question was more than mere negligence or oversight. Additionally, although he refers to the dinner meal that he was given on the five days on which he was unable to eat breakfast as "small," he does not provide any additional evidence or details regarding the contents or estimated caloric value of the meals in question. *See, e.g.*, *Welch v. Spaulding*, 627 F. App'x 479, 483 (6th Cir. 2015) (acknowledging that prisoners have a right to nutritious diet during Ramadan, but noting that "nutritional adequacy is a multi-factored concept," requiring a "fact-specific inquiry [considering], *inter alia*, daily

caloric content, duration of the diet, and the nutritional needs of the prisoner"); *Cunningham,* 667 F.2d at 566 (finding one meal a day for 15 days constitutionally adequate, where the meal contained 2,000 to 2,500 calories and was sufficient to maintain health). Simply put, he has not offered any evidence that the meals that he was provided during Ramadan 2014 were inadequate to maintain his health; as such, his Eighth Amendment claim must fail.

Finally, the Court must consider Plaintiff's claim that the meal policies during Ramadan 2014 infringed upon his free exercise of religion, an inquiry that once again requires the Court to consider whether Plaintiff's rights were substantially burdened under RLUIPA or the First Amendment. The Supreme Court has defined substantial burden as "one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Indep. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). That is to say, the burden "must have some degree of severity to be considered substantial," and as such, the substantial burden threshold is a difficult one to cross. *Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1003 (6th Cir. 2017) (citing *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011), and *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004), for the proposition that a substantial burden must impose a "significantly great restriction" upon religious exercise and must be "more than an inconvenience"); *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) (burden is not "substantial" if policy in question "only has an incidental effect that makes it more expensive or difficult to practice the religion).

Although this claim represents a slightly closer call, the Court nonetheless concludes that Plaintiff has failed to present sufficient evidence from which the Court could infer that Plaintiff was substantially burdened in practicing his religion during Ramadan 2014. Plaintiff's proof

establishes that he received only one meal a day from July 2, 2014 through July 5, 2014, and that he did not receive any food or water on July 28, 2014. Plaintiff does not allege that he felt compelled to modify his behavior and break his Ramadan fast, thereby violating his beliefs, as a result of these errors in the delivery of his Ramadan meals. Rather, Plaintiff alleges minimal levels of physical discomfort and reduced mental focus on the six days in question. And, as mentioned above, he fails to provide any additional factual support that would allow the Court to determine that his right to a nutritious diet was violated during Ramadan 2014. *See Welch*, 627 F. App'x at 483 ("[A] single low-calorie meal to a well-fed prisoner, for example, is unlikely to cause malnourishment" and trigger a constitutional violation); *see also Carter v. Wash. Dep't of Corr.*, 2013 WL 1090753, at *13 (W.D. Wash. Feb. 27, 2013) (no constitutional violation where prison officials corrected caloric values of Ramadan meals and added supplements to the meals after learning of deficiencies).

Thus, even crediting Plaintiff's version of events, the Court simply finds insufficient evidence to demonstrate that genuine issues of material fact remain as to whether his burden was substantial. Rather, the Court finds that the undisputed evidence demonstrates that, for several days, Plaintiff was burdened by the lockdown and the erroneous timing of his food delivery but that his burden was little more than inconvenience and thus fails to pass the rigorous "substantial burden" threshold. Finding that no genuine issues of material fact remain as to Plaintiff's claims regarding the 2014 Ramadan fast, the Court will **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment as to this claim.

## IV. CONCLUSION

For the reasons set forth herein, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [Doc. 89] and **DENIES** Plaintiff's Motion for Summary Judgment [Doc. 92].[14]  Plaintiff's remaining Motions [Docs. 93, 94, 96] are **DENIED AS MOOT**.[15]

This action is hereby **DISMISSED WITH PREJUDICE**.  The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER**.


   s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE

---

[14] Because the Court has concluded that Defendants are entitled to summary judgment on the merits of Plaintiff's claims – as Plaintiff has failed to demonstrate that any genuine issue of material fact remains as to whether his constitutional rights have been violated – the Court finds no need to specifically address the remaining arguments in Defendants' Motion – specifically, that they are entitled to under the theories of respondeat superior and/or Eleventh Amendment immunity.

[15] On November 9, 2017, Plaintiff filed a "Request to Expedite Order on Summary Judgment" [Doc. 92].  On February 5, 2018, Plaintiff filed a Motion requesting "an itemized list of all pro se § 1983 cases pending before this Court," as well as information regarding the age and pending Motions in all such cases [Doc. 93].  These Motions are **MOOT** in light of the Court's instant Order ruling on the pending summary judgment motions in this action.

Then, on March 7, 2018, Plaintiff filed a document titled "Conditional Motion to Dismiss" [Doc. 95].  However, even a cursory review demonstrates that Plaintiff's Motion is not, in fact, one to dismiss.  Rather, Plaintiff indicates that he "no longer seeks to prosecute this cause" but only in the event that (1) "the Court return a summary judgment Order concurring with Plaintiff's Halal food claims and prayer oil claims," or (2) Defendants agree in writing to certain demands made by Plaintiff – including that Plaintiff be able to purchase prayer oil in specific quantities from a specific supplier and that TDOC agree to create a Halal menu that complies with Plaintiff's desired food choices [*Id.*].  This filing is clearly an attempt to involve the Court in settlement negotiations with Defendants, and the Court declines to do so in this case.  Regardless, Plaintiff's Motion is **MOOT** in light of the dismissal of Plaintiff's claims on the merits in this Order.